UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-249-GWU

BRUCE ROSKIE,                                               PLAINTIFF,

VS:                    MEMORANDUM OPINION

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,[1]           DEFENDANT,

## INTRODUCTION

Bruce Roskie brought this action to obtain judicial review of an unfavorable administrative decision on his application for Supplemental Security Income (SSI). The case is before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

---

[1]On February 12, 2007, Michael Astrue became the Commissioner of Social Security replacing Jo Anne B. Barnhart. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, he should be substituted for her as the defendant.

1

>4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).
>5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
>6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).
>
>7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. <u>Id</u>. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Id</u>.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d

654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir.  1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. 404.1521, 416.921.  The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term.  Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985).  The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment,"  Landsaw v. Secretary of Health and Human Services,  803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987).  The plaintiff is said to make out a  prima facie case by proving that she or he is unable to return to this work.  Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir.  1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.

3

Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways that the Commissioner may meet his burden is through the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved.  When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e).  It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985).  Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe.  Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary."  20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b), 416.967(b).  A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an

occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual."  20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Roskie, a 51 year-old man with a "marginal" education and no past relevant work history, suffered from impairments related to alcohol abuse and lowered intellectual functioning.  (Tr. 38, 40, 43).  Despite the plaintiff's impairments, the ALJ determined that he retained the residual functional capacity to perform a restricted range of work at all exertional levels.  (Tr. 43).  Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 43-44).  The ALJ based this decision, in part, upon the testimony of a vocational expert.  (Tr. 42-43).

The hypothetical question presented to Vocational Expert Jane Colvin-Roberson[2] included no exertional restrictions and only a mental limitation to

---

[2]The vocational expert's name (Tr. 206) was misspelled in the transcription of the administrative hearing and in the exhibit list (Tr. 3).

routine, repetitive tasks in an object task-oriented setting rather than a people-oriented setting. (Tr. 248-249). In response, Colvin-Roberson identified a significant number of jobs which could still be performed. (Tr. 249). Therefore, assuming that the vocational factors considered by the expert fairly characterized Roskie's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned finds no error. Dr. Monte Martin examined Roskie and specifically opined that he found no physical limitations. (Tr. 156). Dr. Martin specifically noted upon physical examination that the plaintiff's lungs were clear and that he had a good inspiratory effort. (Tr. 154). The physical examination revealed no neurological deficits. (Tr. 155). The record was reviewed by Dr. Sudideb Mukherjee (Tr. 202) and Dr. David Swan (Tr. 203), each of whom opined that the plaintiff's physical problems were "less than severe." These reports provide substantial evidence to support the administrative decision.

Roskie argues that the ALJ did not properly consider the findings of Dr. Nuveed Loqman, a treating source at Harlan Appalachian Regional Healthcare. A chest x-ray obtained at Appalachian revealed some underlying changes of pulmonary emphysema. (Tr. 209). A cervical spine x-ray revealed osteophyte formation at C4-C5, C5-6, and C6-C7. (Tr. 212). An x-ray of the thoracic spine revealed osteophytosis, while an x-ray of the lumbar spine indicated a mild degree of spondylolisthesis. (Tr. 212). However, despite these x-ray results, Dr. Loqman did not impose any physical restrictions on the claimant. (Tr. 208-214). The mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). As previously noted, neither Dr. Martin nor the reviewers imposed any physical

restrictions. Therefore, under these circumstances, the Court finds no error.

The ALJ also dealt properly with the evidence of record relating to Roskie's mental status. Psychologist Phil Pack examined the plaintiff and opined that he had a "good" ability to understand, retain and follow instructions, sustain attention and concentration, relate to others including fellow workers and supervisors and to adapt to the stresses and pressures of daily work activity. (Tr. 161). The ALJ's findings were consistent with this opinion. Psychologists Ann Demaree (Tr. 163-164) and Edward Stodola (Tr. 168-169), the non-examining medical reviewers, each opined that the claimant would be "moderately" limited in such areas as (1) understanding, remembering and carrying out detailed instructions; (2) completing a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (3) to respond appropriately to changes in the work setting. To the extent that these restrictions might appear more serious than those presented in the hypothetical question, the Court notes that these opinions would be outweighed by that of Pack, the actual examiner. The administrative regulations provide that "we generally give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. Section 416.927(d)(1). Furthermore, the Court notes that Social Security Ruling 85-15 provides that when a person's only impairment is mental, a finding of disabled status is only appropriate if the impairment imposes a "substantial" loss of ability to handle simple instructions, respond appropriately to supervision, co-workers or usual work situations, and to deal with work changes. The reviewer's restrictions are not this severe in these areas. Therefore, substantial evidence supports this portion of the ALJ's decision.

Roskie asserts that the ALJ erred in his duty to properly develop the record because he did not obtain mental health treatment records from the time he was imprisoned. The administration did arrange for Pack's consultative mental health examination. The plaintiff denied having a history of mental health treatment during Pack's examination. (Tr. 158). The alleged records might not even exist. Furthermore, the claimant indicated during his interview that it had been five years since he was imprisoned. (Tr. 158). The alleged records would not appear relevant to the pertinent time frame.[3]  Therefore, under these circumstances, the Court finds no error.

Roskie also argues that the ALJ erred in his duty to develop the record by not arranging for a consultative eye examination. However, Dr. Martin did examine the plaintiff's eyes during his evaluation and noted uncorrected vision to be 20/25 on the right and 20/30 on the left. (Tr. 154). He imposed no physical restrictions relating to this finding and did not suggest that further evaluation by an eye specialist was required. Therefore, the undersigned rejects the claimant's argument.

Finally, Roskie asserts that the ALJ erred in failing to find that he was illiterate. Achievement testing by Pack revealed a 1st grade reading level. (Tr. 160). The plaintiff testified during the hearing that he had problems reading and writing big words; he did indicate that he had only a 6th grade formal education and <u>could</u> read small words. (Tr. 220-222). The vocational expert heard this testimony and was aware of the type of jobs which the claimant had performed in the past despite his literacy problems. (Tr. 248). In identifying the available job

---

[3]The plaintiff filed his SSI application in March of 2004. (Tr. 79). The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after the application date. <u>Casey v. Secretary of Health and Human Services</u>, 987 F.3d 1230, 1233 (6th Cir. 1993).

base, the Colvin-Roberson did consider the claimant's education and work background. (Tr. 249). Therefore, any error on the part of the ALJ would appear harmless.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 28th day of February, 2007.

Signed By:

*G. Wix Unthank*

United States Senior Judge